[No. 5460.   Decided March 9, 1905.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES PEARSON, *Appellant*.[1]

APPEAL—DISMISSAL—FILING OF STATEMENT AND BRIEFS. Motions to strike the statement and briefs and to dismiss the appeal for failure to file the same in time will be overruled where the statement was filed within time properly extended and the briefs were filed within 90 days after the appeal was taken.

WITNESSES—COMPETENCY—CONVICTION OF PERJURY. A witness convicted of cattle stealing, who acknowledges upon cross-ex-

[1]Reported in 79 Pac. 985.

amination that he committed perjury, is not incompetent by rea·
son of Bal. Code, § 5992, providing that a person convicted of
perjury shall not be a competent witness in any case.

CRIMINAL LAW—CATTLE STEALING—TESTIMONY OF ACCOMPLICE—
CORROBORATION—CAUTION TO JURY—INSTRUCTIONS. In a prosecu-
tion for cattle stealing, where a convicted accomplice admitted
to having testified in a former trial to statements contradicting
his present testimony, and there was no corroborating evidence,
it is reversible error to refuse to give an instruction cautioning
the jury against convicting the accused upon the uncorroborated
testimony of an accomplice, and stating that the jury could not
so convict where the accomplice admitted to testifying differently
on a former occasion.

Appeal from a judgment of the superior court for Oka-
nogan county, Martin J., entered May 23, 1904, upon
a trial and conviction of the crime of cattle stealing.   Re-
versed.

*G. V. Alexander,* for appellant.

*E. K. Pendergast,* for respondent.

CROW, J.—The appellant, James Pearson, was convicted
of the crime of stealing cattle, was sentenced to a term of
five years in the penitentiary, and appeals to this court.

Respondent presents a motion to strike the statement of
facts, for the reason that the same was not filed and served
within the time required by law.   The record shows that a
proper extension of time for filing the statement had been
obtained, and that the statement was filed and served with-
in such extended time.   The motion is therefore denied.
A motion is also made to strike appellant's brief, for the
reason that the same was neither served nor filed within
the time limited by law.   The record, however, shows that
it was served and filed within ninety days after the notice
of appeal was given.   The motion to strike the brief is de-
nied, as is also a third motion made by respondent, to dis-

miss this appeal, which third motion is based on the two previous motions above mentioned.

An information was filed on August 26, 1903, against the appellant, James Pearson, and also against one William Wilson and one Lewis Haley, charging them with the crime of stealing twelve head of neat cattle. The appellant, James Pearson, was tried separately, and convicted. It appears from the record, that one John Haley had previously been convicted in the superior court of Okanogan county, Washington, of the crime of stealing these same cattle; that he had been sentenced to a term of eight years in the penitentiary, and was serving said term at the time of the trial of appellant. Although John Haley had been tried on a separate information, nevertheless, the crime for the commission of which he had been convicted was the same crime charged against appellant, the claim of the state being that the act of stealing was the joint act of John Haley and the parties charged in this action. On appellant's trial, the said John Haley was presented as a witness for the state, having been brought from the penitentiary at Walla Walla for that purpose. Appellant objected to his competency as a witness, and moved the court to strike his testimony, basing his objection and motion on the fact that, as claimed by appellant, said John Haley was shown by his own evidence to be a self-confessed perjurer, and guilty of the crime of perjury. On his examination in chief, Haley testified in part as follows:

"Q. What is your name? A. My name is John Haley. Q. And your age? A. Twenty-four years of age. Q. Are you now confined in the penitentiary of this state? A. Yes, sir. Q. On a conviction of cattle stealing? A. Yes, sir. Q. What cattle? A. Tom Ellis's cattle. Q. This gentleman here, Thomas Ellis? (Indicating complaining witness.) A. Yes, sir. Q. Under what length of sentence are you? A. Eight years.

Q. How long ago were you sentenced? A. Pretty near two years; sentenced on the 25th of October, 1902."

On cross-examination he testified as follows:

"Q. You say you are serving a term in the state penitentiary at this time, Mr. Haley? A. Yes, sir. Q. For what offense? A. For stealing those cattle. Q. For stealing the cattle named in this information? A. Yes, sir. Q. How long a term are you serving there? A. I am serving eight years. Q. You were brought up from the penitentiary as a witness in this case, were you? A. Yes, sir. . . . Q. You testified at your own trial, did you? A. Yes, sir, I did. Q. And you denied, did you not, at that trial, that you had any connection with the stealing of these cattle? A. I did. Q. Or that you knew anything about the stealing of them? A. No, I didn't know anything about them at that time. Q. Didn't you deny that you had any connection or complicity with the stealing of these cattle? A. Yes, sir, I did. Q. You were under oath at that time? A. Yes, sir, I suppose so. I was on the stand. Q. Don't you know whether you were or not? A. I guess I was; I was on the stand. Q. You were under oath when you made that statement and testified, were you not? A. I suppose I was, yes. Q. Don't you remember whether you were sworn before you testified or not? A. Yes, sir, I was sworn. Q. And all the testimony that you gave at that time, in which you denied all connection with these cattle and the stealing of them, you want the jury to believe at this time was false, do you? A. Yes, sir, I do. Q. And that you committed perjury at that time when you testified? (Objection sustained.) Q. You testified at that time, did you not, Mr. Haley, with reference to the facts involved in this case, that is the stealing of these cattle? A. Well, I don't understand just what you are getting at now. Q. These are the same cattle that you were convicted of stealing, are they? A. Yes, sir, it is the same bunch of cattle."

Section 5992, Bal. Code, reads as follows:

"No person offered as a witness shall be excluded from giving evidence by reason of conviction of crime, but such conviction may be shown to affect his credibility: Provided, That any person who shall have been convicted of the crime of perjury shall not be a competent witness in any case, unless such conviction shall have been reversed. or unless he shall have received a pardon."

Appellant objected to the competency of John Haley under this section, claiming that, although he had not been convicted of the crime of perjury, nevertheless he was shown by his own admissions to be a perjurer, and his testimony should be rejected. Appellant's objection was overruled by the trial court, and Haley's testimony was admitted. The learned counsel for appellant makes a very strong and forcible argument in favor of his contention that the witness Haley was incompetent, under said section 5992, citing, with others, the following authorities: *People v. Evans,* 40 N. Y. 1; *Dunlop & Meigs v. Patterson,* 5 Cowan 243; *Williams v. Bishop,* 17 Colo. App. 503, 68 Pac. 1063; 3 Ency. of Evidence, p. 779.

The case of *People v. Evans, supra,* seems to be the authority upon which appellant places the greatest reliance. But in that case the witness Near was practically the only witness produced against the defendant Evans, who was charged with the crime of subornation of perjury, in procuring Near to swear falsely on a material matter on the trial of a previous action. The prosecution depended solely on the testimony of Near, to show that perjury had been committed by himself in the previous action, and, also, that the defendant Evans had suborned him to commit such crime of perjury. There was no corroboration of Near's testimony on either of these two points. The trial judge refused to instruct the jury that they could not convict upon the uncorroborated testimony of Near that he

had committed the perjury at the instigation, and by the inducement, of the defendant Evans, and this was held to be error.

We do not think the principle announced in that case would justify us in holding that John Haley was incompetent as a witness in the case at bar, simply because he made admissions which would make him guilty of the crime of perjury. Section 5992 applies only to a person who shall have been *convicted* of the crime of perjury, meaning, undoubtedly, a legal conviction upon trial in a court of record. We do not feel ourselves at liberty to read into the statute words not already there, so as to give it a construction which would not be otherwise authorized. The legislature has not said that a witness is disqualified because he admits he has, at a former trial, sworn falsely as to the same circumstances constituting the subject matter of his evidence; but it has said such disqualification must be based upon a conviction of the crime of perjury. We do not think the witness John Haley was disqualified under the statute, and the court did not err in admitting his testimony.

The appellant excepted to the trial court's refusal to give the jury. the fifth instruction requested by appellant, reading as follows:

"The witness John Haley, who has testified in this case, is an accomplice, and an accomplice is one who is associated with others in the commission of crime, all being principals. Haley has testified that he was associated with the defendant in stealing the cattle mentioned in the information, and that in law would make him an accomplice. The court instructs you that the testimony of an accomplice comes from a polluted source, and that, while the rule of law is that a defendant may be convicted on the uncorroborated testimony of an accomplice, where the honest judgment is satisfied beyond a reasonable doubt, still a jury should act upon

such testimony with great care and caution and subject it to a careful examination in the light of other evidence in the case, and the jury should not convict upon such testimony alone, unless, after a careful examination of it, they are satisfied beyond all reasonable doubt of its truth.   In many, if not in most, cases, the evidence of an accomplice, uncorroborated in material matters will not satisfy the honest judgment beyond a reasonable doubt, and it is clearly insufficient to authorize a verdict of guilty.   Where an accomplice has been impeached by showing that he has testified differently at some other time with reference to the facts in issue, then in such case the jury cannot convict upon his uncorroborated testimony.   And if you find that the witness John Haley has testified concerning the facts in issue in this case differently at another time from his testimony in this case, then you cannot find the defendant guilty on his uncorroborated testimony.   The corroboration that the law requires for the testimony of an accomplice ought to be sufficient to satisfy the jury of the truth of the accomplice's testimony, and the corroboration must be as to some fact connecting the defendant with the commission of the offence, and is not sufficient if it merely shows that the offence was committed and the circumstances thereof."

The refusal to give this instruction, which was not given in any other substantial form, raises the question whether or not in this state a conviction can be had in a criminal action on the uncorroborated testimony of an accomplice, especially when such accomplice in giving such testimony flatly admits that, on a former trial, he testified to statements directly contradictory to those made by him in his later testimony given as such accomplice; or, in other words, when in his later testimony he makes admissions which would clearly show him to have been guilty of the crime of perjury.   We have carefully examined all of the evidence in this case and, although it is contended in respondent's brief that the record shows evi-

dence in corroboration of the testimony of John Haley, we utterly fail to find any such corroborative evidence on any material fact in issue. The jury seems to have regarded the testimony of John Haley as worthy of credit, to have believed the same, and to have based its verdict thereon. We do not think an appellate court should invade the province of a jury and attempt to weigh the evidence of witnesses, or pass upon their credibility, but we may examine the record and ascertain whether, upon the evidence as presented and admitted, the jury was properly instructed as to the testimony given by an accomplice, as to how carefully the same should be weighed and regarded, and as to what corroboration of such testimony, if any, was necessary to warrant a conviction.

"The state of the law as to the corroboration of accomplices is somewhat peculiar. It has been repeatedly laid down that a conviction on the testimony of an accomplice uncorroborated is legal, . . . But while the law is thus fully established, the practice of judges is almost invariably to advise juries not to convict upon the evidence of an accomplice who is uncorroborated, and sometimes judges, where the testimony of the accomplice is the only evidence, take upon themselves to direct an acquittal of the prisoner." 1 Roscoe, Criminal Evidence (8th ed.), p. 201.

"In criminal trials, where the testimony of accomplices has been resorted to to procure convictions, it has been customary for judges presiding at the trial to instruct juries that it was ordinarily unsafe to convict upon the unsupported and uncorroborated evidence of the accomplice. Such instructions, however, have been merely advisory." 3 Rice, Evidence, § 321.

See, also, *Haskins v. People,* 16 N. Y. 344. In *Edwards v. State,* 2 Wash. 291, 306, 26 Pac. 258, 262, this court said:

". . . it is true that we have no statute requiring

the corroboration of an accomplice, such as is found in a few of the states. It is also true that at common law conviction upon the unsupported testimony of an accomplice was upheld to the extent, at least, that, although the higher courts and law writers laid it down that a trial court ought to advise the jury not to convict on such testimony, it was not reversible, even if they did not so advise. Yet the books are full of cases from courts not bound by any statute, both in England and America, where corroboration has been held necessary. 1 Amer. & Eng. Enc. Law, tit. 'Accessory,' § 18, p. 74. Cases are rare, indeed, where, if the prosecutor has the assistance of a willing accomplice, no corroborative testimony can be produced. In practice it is almost invariably attempted, and juries are told, as in this case, that unless there is corroboration they should acquit. Perhaps the true view of the matter is that in many, if not in most cases, the evidence of an accomplice, uncorroborated in material matters, will not satisfy the honest judgment beyond a reasonable doubt, and that it is clearly insufficient to authorize a verdict of guilty. But there may occur other cases where, from all the circumstances, the honest judgment will be as thoroughly satisfied from the evidence of the accomplice of the guilt of the defendant as it is possible it could be satisfied from human testimony; and in such cases justice demands that the evidence be accepted, so far as the court is concerned."

See, also, *Rose v. State,* 2 Wash. 312, 26 Pac. 264. In *State v. Coates,* 22 Wash. 601, 61 Pac. 726, this court, in sustaining the instruction given the jury, held that in effect the trial court had told the jury it could convict upon the uncorroborated testimony of an accomplice, but had, at the same time, given the ordinary precautionary charge as to how the jury should act on such testimony. White, J., who wrote the opinion, however, does not attempt to overrule the doctrine of *Edwards v. State, supra;* but, in fact, after quoting a portion of the language con-

tained in *Edwards v. State,* and commenting upon the same himself, says:

"The jury was told to view the testimony of Kauffman [the accomplice] in the light of all the other evidence, and we will point out further on in this opinion other evidence sufficient to corroborate his testimony."

And such "other evidence" is discussed later on in the opinion.

In *State v. Concannon,* 25 Wash. 327, 65 Pac. 534, Reavis, J., in commenting on the instructions of the trial court relative to the testimony of an accomplice, quotes with approval from *Edwards v. State, supra,* and then, after directing attention to the fact that there was no substantial corroboration of the testimony of Dunlap, the accomplice, says:

"But, in the weight given to the corroborating testimony of the accomplice, we conclude that this case should fall under the rule stated in *Edwards v. State, supra,* and the judgment is reversed and the cause remanded for a new trial."

In *State v. Harras,* 25 Wash. 416, 421, 65 Pac. 774, 776, Mount, J., says:

"It is next urged that the instructions ignored the rule that, to justify a conviction, the testimony of an accomplice must be corroborated. By instructions No. 12, 13, and 14, the court submitted the question of the credibility of witnesses to the jury, and by No. 15 the jury are instructed under what circumstances the witness Kidwell would be an accomplice, and also under what circumstances he would not be an accomplice, leaving this question to be determined by the jury. The court further instructed the jury that, in case they believed the former, 'you should consider with greater care whether the story he has told on the witness stand is corroborated by any fact or facts testified to by other witnesses.' And again the jury are told: 'You should not, however, decide the case upon the testimony of Kidwell alone, but upon all the evidence be-

fore you. You should give it all due and candid considera-
tion. This seems to comply with the rule as laid down by
this court in *State v. Coates,* 22 Wash. 601, 61 Pac. 726,
and is as favorable to defendant as required in *Edwards v.
State,* 2 Wash. 291, 26 Pac. 258, and *State v. Concannon,
ante* p. 327, 65 Pac. 534."

A careful examination of these various Washington
cases will show that at no time has this court overruled
the doctrine announced in *Edwards v. State, supra,* as above
quoted, and such examination will also show that, in every
instance where a conviction secured on the evidence of an
accomplice has been sustained, there appears to have been
some corroborative testimony. While we do not now an-
nounce the doctrine that a conviction should be permitted
in no case on the uncorroborated testimony of an accom-
plice, nevertheless we do hold that the trial court should
carefully caution the jury in such cases in the matter of
weighing such testimony, and should warn it against a
conviction on such uncorroborated testimony. We think
the refusal of the trial court to give the fifth instruction
above set forth, which was requested by appellant, was re-
versible error.

There are many assignments of error made by the appel-
lant, but in view of what has been heretofore said in this
opinion, it is not necessary to discuss the same.

The judgment of the superior court is reversed, and the
cause remanded with instructions to grant the appellant a
new trial.

MOUNT, C. J., DUNBAR, RUDKIN, and ROOT, JJ., con-
cur.

HADLEY and FULLERTON, JJ., took no part.